# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JAMES EARL MORRIS,                    )
                                      )
    Petitioner,               )
                                      )
v.                                    )  5:11-cv-01129-SLB-JEO
                                      )
WARDEN DEWAYNE ESTES[1] and the       )
ATTORNEY GENERAL FOR THE              )
STATE OF ALABAMA,                     )
                                      )
    Respondents.              )

## MEMORANDUM OPINION

  This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254 by James Earl Morris, an Alabama state prisoner acting *pro se*. (Doc.[2] 1). The State has answered, denying that Morris is entitled to relief. (Doc. 5). Morris filed materials in reply (Doc. 7), as well as an "addendum" to his habeas petition (Doc. 11) and a "supplement" thereto. (Doc. 12). The State filed an amended response. (Doc. 13). The action is now ripe for decision. Upon consideration, the court concludes that the petition is due to be denied.

---

[1] Petitioner originally named Billy Mitchem as a Respondent, in his capacity as the Warden of the Limestone Correctional Facility where Petitioner is imprisoned. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004); Rule 2(a), RULES GOVERNING § 2254 CASES. Since the filing of the petition, Mitchem has been succeeded in that position by Dewayne Estes. http:// www. doc. state. al. us /facility .aspx?loc=10. Accordingly, Estes is due to be substituted for Mitchem. *See* FED. R. CIV. P. 25(d).

[2] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the Case Management/Electronic Case Files ("CM/ECF") system.

# I.    BACKGROUND

In September 2008, Morris was convicted in the Circuit Court of Morgan County, Alabama, on two counts of robbery in the first degree.  *See* Ala. Code §§ 13A-8-41 and -43.  He was sentenced pursuant to the Alabama Habitual Felony Offender Act, Ala. Code § 13A-5-9, to serve two concurrent terms of 21 years imprisonment.  Morris appealed, contesting the sufficiency of the evidence, as well as the trial court's denial of his request that the jury be instructed on theft of property in the third degree, as a lesser included offense of robbery.  In considering these claims, the Alabama Court of Criminal Appeals summarized the evidence as follows:

> At trial, the State presented evidence that on November 4, 2007, Morris stole a watch and a pair of sunglasses from Wal-Mart in Decatur, Alabama.  Anthony Woods, a Wal-Mart loss prevention officer, testified that he heard a breaking noise and observed Morris remove a watch from its jewelry case.  He then witnessed Morris bite off the tag of the watch and place it in his left front pocket.  Woods then saw Morris pick up a pair of sunglasses, bite the tag off, and hang them on his shirt collar.  Thereafter, Morris attempted to leave the store without paying for the sunglasses or watch.
>
> As Morris was attempting to leave, Woods and two other Wal-Mart employees approached him in the parking lot and identified themselves as Wal-Mart security personnel.  The Wal-Mart employees asked Morris to come back inside to discuss the situation.  At that point, Morris became visibly agitated, reached into his right front pocket, pulled out a knife, and, in an 'ill-mannered' tone, told them, 'Don't touch me. Don't touch me.  Don't put your hands on me.'  (R. 45).  Woods testified that he 'felt threatened' and had been trained to 'back off;' and get the individual's license plate number if they have a 'blade.'  (R. 45, 55-57).  Morris continued to clinch the knife in a threatening manner until he got into his vehicle.  (R. 38).  Morris was later arrested by Decatur Police and a black knife matching the employees's description was found during a search of Morris's vehicle.  (R. 72-74).

2

(Doc. 5-6 at 6).[3/]  The court of appeals held that such evidence was sufficient to support Morris's robbery convictions.  (*Id.*)  The court likewise rejected his claim regarding the denial of his request to instruct the jury on third-degree theft of property.  (*Id.* at 7-9).  On September 11, 2009, the Alabama Supreme Court denied Morris's petition for certiorari.

On February 22, 2010, Morris filed a *pro se* application for post-conviction relief pursuant to Rule 32 of the ALABAMA RULES OF CRIMINAL PROCEDURE.  In his Rule 32 petition, Morris advanced claims alleging that his trial counsel provided ineffective assistance in violation of the Sixth Amendment, based on the following acts and omissions:

(1)     by failing to move to suppress or object to the introduction of videotape evidence that Petitioner claims "showed no criminal acts" by him;

(2)     by failing to enter medical records supporting that it was "impossible [for Morris] to hold a knife in his right hand as" Anthony Woods, a Wal-Mart security employee, had testified;

(3)     by failing to subpoena the female employee who was working at the counter in the jewelry department on the date in question;

(4)     by failing to make more than one objection during trial;

(5)     by failing to object to testimony by Decatur police officer Walter Segars that the van that Morris was riding in when he was stopped and arrested had been reported stolen;

(6)     by failing to object to testimony by Segars that a "joint" was found inside the van when it was searched incident to Morris's arrest;

(7)     by failing to object to the introduction of two pair of sunglasses and two watches when there was only testimony that Morris stole one pair of sunglasses and one watch;

---

[3/]The citations by the Alabama Court of Criminal Appeals to "R. ___" are to the reporters transcript from Morris's trial.  *See* ALA. R. APP. P. Rule 10(b), (c)(2); *id.*, Rule 28(g).  The reporter's transcript from the trial is contained in Doc. 5-1 at 57-107 (R. 1-51) and Doc. 5-2 at 1-87 (R. 52-138).

(8)     by failing to call certain witnesses, namely: Dr. Ken Chandler, Nanette Mercer [Pannell],[4/] Laketta Morris, and Lotoya Morris;

(9)     by eliciting testimony on cross-examination of Decatur police Sergeant Rick Archer about the van being reported stolen and about a marijuana cigarette being found in the van; and

(10)    by eliciting testimony on cross-examination of Archer about other drug paraphernalia also being found in the van.

(Doc. 5-7 at 23-24; *see also id.* at 25-29).  The trial court issued an order denying all of these claims without a hearing, holding that Morris's allegations as pled were insufficient under ALA. R. CRIM. P. 32.3 and 32.6(b) to meet his burden to show that his counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).  (*Id.* at 3-6).  Morris appealed to the Alabama Court of Criminal Appeals, raising the same issues.  (*See* Doc. 5-9 at 8-9).  The appellate court affirmed based upon the trial court's order.  (Doc. 5-11).  Morris then filed a petition for certiorari in the Alabama Supreme Court (Doc. 5-12), which was denied on January 7, 2011.  (Doc. 5-8 at 2).

On March 25, 2011, Morris filed his instant federal habeas petition pursuant to 28 U.S.C. § 2254.  (Doc. 1 ("Pet")).  Liberally reading his *pro se* application, *see Dupree v. Warden*, 715 F.3d 1295, 1299 (11th Cir. 2013), Morris raises all of the claims raised in his Rule 32 petition, plus several others.  For shorthand reference, Morris's claims are enumerated as follows:

(1)     Trial counsel provided constitutionally ineffective assistance based on the following acts and omissions:

        (a)     by failing to move to suppress or object to the introduction of videotape evidence that Petitioner claims "showed no criminal acts" by him (Pet.[5/] at 13-14, 15);

---

[4/]Pannell is also referred to as "Parcell" at times in the record.

[5/]Morris's original habeas petition is a 40-page electronically filed document.  It includes several sections with different pagination, so citations herein are to the page in the CM/ECF system.

4

(b)      by failing to investigate his medical history and obtain his medical records and subpoena Morris's physician, Dr. Ken Chandler, to testify that it was "impossible [for Morris] to hold a knife in his right hand" as the Wal-Mart security employee, Anthony Woods, had testified (Pet. at 5, ¶ 12B, *id.* at 11);

(c)      by failing to subpoena the female employee who was working at the counter in the jewelry department on the date in question (Pet. at 14, 15, 19);

(d)      by failing to make more than one objection during trial (Pet. at 14);

(e)      by failing to object to testimony by Decatur police officer Walter Segars that the van that Morris was riding in when he was stopped and arrested had been reported stolen (Pet. at 14);

(f)      by failing to object to testimony by Segars that a "joint" was found inside the van when it was searched incident to Morris's arrest (Pet. at 14);

(g)      by failing to object to the introduction of two pair of sunglasses and two watches when there was only testimony that Morris stole one pair of sunglasses and one watch (Pet. at 14);

(h)      by failing to call certain other witnesses, namely: Nanette Mercer [Pannell], Laketta Morris, and Lotoya Morris (Pet. at 15; *id.* at 18);

(i)      by cross-examining Decatur police Sergeant Rick Archer about the van being reported stolen and about a marijuana cigarette being found in the van (Pet. at 15);

(j)      by cross-examining Archer about other drug paraphernalia also being found in the van (Pet. at 15);

(k)      by failing to provide Morris with a preliminary hearing transcript or failing to ensure that such a record was made (Pet. at 12-13); and

---

Specifically, the Petition encompasses: (1) a pre-printed § 2254 habeas application form for use in this court by Alabama state prisoners (Pet. at 1-6), (2) a handwritten certificate of service (*id.* at 7), and (3) a typed supporting memorandum.  (*Id.* at 9-24).  The remaining pages are carbon copies of the certificate of service (*id.* at 8) and the memorandum.  (*Id.* at 25-40).

5

(*l*)    by failing to provide Morris with otherwise unspecified "transcripts, motions, and brief's (sic) filed [in his case]"  (Pet. at 12);

2.    Appellate counsel provided ineffective assistance by failing to raise on direct appeal the foregoing issues of ineffective assistance of trial counsel (Pet. at 22-23);

3.    A substantive claim contesting the admission of the videotape (Pet. at 15);

4.    The Alabama courts improperly denied him an evidentiary hearing on his ineffective-assistance claims in the Rule 32 proceedings (Pet. at 5, ¶ 12A); and,

5.    The Alabama courts were "manifestly unfair" in holding that he had failed to sufficiently plead his ineffective-assistance claims for purposes of ALA. R. CRIM. P. 32.6(b) (*id.* at 5, ¶ 12C; *see also id.* at 20-22).

In response to an order to show cause from the court (Doc. 4), the State filed its Answer, appending various records from the State trial and appellate courts, both from the trial and the Rule 32 proceedings.  (Doc. 5).  The State discerned Morris to be raising only ineffective-assistance-of-counsel claims, essentially as set forth above, as well as a freestanding claim that the videotape was improperly admitted at trial.  The State argued, however, that all of those claims were procedurally defaulted, either because they were unexhausted and the time to present them had expired or because they had been rejected on independent state-law procedural grounds.

Morris filed a traverse in which he reiterated that he was "actually innocent" and that there was "no evidence to legally prove [his] guilt beyond a reasonable doubt."  (Doc. 7 at 1-2).  He further related his version of the relevant events at the Wal-Mart store.  According to Morris, who is African-American, he and his girlfriend, Nanette Mercer Pannell, who is white, had gone to the store to exchange a malfunctioning wristwatch purchased there previously.  (*Id.* at 2).  They went to the jewelry department and, with the assistance of a female store clerk at the counter, picked out a replacement watch without incident.  (*Id.*)  Morris says that, after they exited the store and when they

were walking in the parking lot towards their vehicle, "two white men grabbed [and] accosted" him without identifying themselves.  (*Id.*)  Morris told them to take their hands off of him and asked why they were grabbing him.  (*Id.*)  At that point, he says, the men identified themselves as Wal-Mart security personnel, and one of the white men "insinuated or accused[ ]" Morris of having stolen something from the store.  (Doc. 7 at 2).  Morris denied the accusation and, in an effort to demonstrate that he had no store property, he emptied his pockets.  (*Id.*)  Morris acknowledges that in doing so he removed a closed knife from his pocket and showed it, along with some cash, to the men, but Morris denies that he ever opened the knife or threatened anyone with it.  (*Id.* at 4).  Morris refused to accompany the men back into the store, and he and his girlfriend again started walking towards their vehicle.  (*Id.* at 2-3).  Morris alleges that as they did so, one of the men started yelling racial epithets and insults at both Morris and his girlfriend, adding that Morris was "going to be sorry."  (*Id.* at 3).  Shortly after driving out of the parking lot, their vehicle was stopped by police, leading to Morris's arrest.  (Doc. 7 at 3).

In April 2013, Morris filed a 53-page "Addendum" to his § 2254 habeas petition, to which several exhibits were attached.  (Doc. 10 ("Addendum" or "Add.")).  In his Addendum, Morris first made additional arguments in support of his claims that his trial counsel was ineffective.  These arguments relate to counsel's (a) failure to object to the admission of the videotape (Add.[6] at 4-10); (b) failure to introduce medical record evidence to rebut witness testimony that Petitioner held a knife in his right hand when he threatened Wal-Mart security personnel (*id.* at 10-12); (c) failure to subpoena the female Wal-Mart employee who was working in the jewelry department (*id.* at 13-16);

---

[6]Citations herein to "Add. at ___" are to the page number of the 65-page electronically filed Addendum document.

(d) failure to make more than one objection during the course of the trial (*id.* at 16-18); (e) failure to obtain a transcript of the preliminary hearing (*id.* at 16); (f) failure to object to the State's introduction into evidence of two pair of sunglasses and two watches when testimony was that Petitioner took only one pair of sunglasses and one watch (*id.* at 18-25); (g) failure to subpoena Petitioner's girlfriend, Pannell, as a defense witness (*id.* at 25-28); and (h) failure to object to, and elicitation of, testimony regarding the van being stolen and being found to contain marijuana and drug paraphernalia (*id.* at 28-29). The Addendum also contains further discussion of Petitioner's allegations of "actual innocence" (*id.* at 31-34), as well as claims that "new evidence has come to light since [his] trial which was not known to [him] at the time at the time of his trial or at the time of filing of his Rule 32 postconviction petition in the state courts." (Add. at 41).

Construing Petitioner's Addendum[7] as an amended habeas petition, the State filed a response (Doc. 13) in which it conceded that Morris had exhausted two of his claims alleging ineffective assistance of trial counsel, namely, his claim that counsel should have subpoenaed medical records and Morris's physician to testify about Morris's alleged limited use of his right hand and his claim based on counsel's failure to contest the admission of the videotape. The State argued, however, that, based upon *Borden v. Allen*, 646 F.3d 785 (11th Cir. 2011), those claims and any others potentially exhausted and addressed on appeal had been rejected on the merits, so the resolution of those claims by the Alabama Court of Criminal Appeals is entitled to deference under 28 U.S.C. § 2254(d). The State further insisted that all of Petitioner's other ineffective-assistance claims and his substantive

---

[7] In May 2013, Morris had also filed a brief "Supplement" to his Addendum. (Doc. 11). It included two additional exhibits, namely, a copy of the Alabama Supreme Court's opinion in the *Goodman* case (*id.* at 6-14) and a probation officer's report relating to Morris's instant robbery convictions that he emphasizes contains inaccurate information about the evidence in his case. (*Id.* at 15).

claim regarding the admission of the videotape remained unexhausted and procedurally defaulted. In particular, the State argued that Morris's protestations of actual innocence offered to excuse his default amounted to "unfounded conjecture," were not supported by any actual evidence, and failed to show a fundamental miscarriage of justice.

## II.   HABEAS REVIEW STANDARDS AND LIMITATIONS

### A.   Limits on the Availability of Review: Exhaustion and Procedural Default

A federal district court is authorized to entertain an application for a writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). However, this court may not grant federal habeas relief based upon errors of state law unless such error also gives rise to a violation of the United States Constitution or federal law otherwise. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011); *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010).

A state prisoner is also generally ineligible for relief under § 2254 even as to federal claims unless he has first exhausted the remedies available in the courts of the State of conviction. *See* 28 U.S.C. § 2254(b)(1)(A); *Kelley v. Secretary for Dept. of Corr.*, 377 F.3d 1317, 1343-44 (11th Cir. 2004). The exhaustion requirement is designed "to effect a proper balance between the roles of state and federal judicial institutions in protecting federal rights." *Ogle v. Estelle*, 592 F.2d 1264, 1267 (5th Cir. 1979).[8] As a matter of comity, the rule requires the federal courts to allow the states the initial "opportunity to pass upon and correct errors of federal law in the state prisoner's conviction." *Fay v. Noia*, 372 U.S. 391, 438 (1963). Such a rule furthers the strong federal policy that federal

---

[8]The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

courts should not unduly or prematurely interfere with state court proceedings. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). The exhaustion requirement is not satisfied until the claim has been fully and fairly presented to the state courts for consideration. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Heath v. Jones*, 863 F.2d 815, 818 (11th Cir. 1989). This means that "petitioners [must] present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Hunt v. Commissioner, Ala. Dep't of Corr.*, 666 F.3d 708, 730-31 (11th Cir. 2012) (quoting *Kelley v. Secretary for the Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004). In other words, "[t]he ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Kelley*, 377 F.3d at 1345 (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)) (internal quotation marks omitted); *see also Lucas v. Secretary, Dep't of Corr.*, 682 F.3d 1342, 1352 (11th Cir. 2012). The Supreme Court has held that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

Further, exhaustion requires a federal claim to be presented through one complete round of the State's trial and appellate review process, either on direct appeal or in State post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Alabama that includes presentation of claims to the Alabama Supreme Court. *See Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003); *Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001). Where a claim has not been exhausted in the State courts and the time in which to present the claim there has expired, the claim is procedurally defaulted and habeas review in the federal courts is generally precluded. *See*

*Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *McNair v. Campbell*, 416 F.3d 1291, 1305 (11th Cir. 2005).

Still further, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman*, 501 U.S. at 729; *Lee v. Kemna*, 534 U.S. 362, 375 (2002)); *Wainwright v. Sykes*, 433 U.S. 72, 81-88 (1977). "[C]onsistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, ... when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone*, 556 U.S. at 465 (citing *Coleman*, 501 U.S. at 731). However, "federal courts on habeas corpus review of state prisoner claims ... will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 734-35 (quoting *Long v. Michigan*, 463 U.S. 1032, 1040-41 (1983)). Thus, in order for a state procedural ruling to constitute an independent and adequate ground precluding review of a federal claim, the last state court rendering a judgment in the case must "clearly and expressly" state that it is relying, at least in the alternative, on a purely state-law procedural ground to dispose of the federal claim without reaching its merits. *Coleman*, 501 U.S. at 734-35; *Harris v. Reed*, 489 U.S. 255, 263-265 & n.10 (1989). Further, to "qualify as 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. ___, ___, 131 S. Ct. 1120, 1127 (2011)

(quoting *Beard v. Kindler*, 558 U.S. 53, 60-61, 130 S. Ct. 612, 618 (2009) (internal quotation marks omitted)); *see also James v. Kentucky*, 466 U.S. 341, 348 (1984).  A "discretionary" state procedural rule may satisfy such requirements.  *See Kindler*, 130 S. Ct. at 618.  However, a state procedural rule is not "adequate" if it is "applied in an arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or where the rule, even if otherwise generally sound, is "exorbitant" as applied in the petitioner's case.  *Lee*, 534 U.S. at 376.

**B.      Overcoming a Failure to Exhaust or a State Procedural Default**

Where a state prisoner has not exhausted a federal claim or procedurally defaulted it in the state courts, a petitioner is generally entitled to federal habeas review of the merits of any such claim only upon a showing of either (1) "cause" for the default *and* resulting "prejudice," *or* (2) that failure to review the claim will result in a "fundamental miscarriage of justice."  *See Spencer v. Secretary, Dep't of Corr.*, 609 F.3d 1170, 1179-80 (11th Cir. 2010); *In re Davis*, 565 F.3d 810, 821 (11th Cir. 2009).  "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (quotation marks and citation omitted); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986).  "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson*, 353 F.3d at 892 (citation omitted).  The "miscarriage of justice" exception applies "where a constitutional violation has resulted in the conviction of someone who is actually innocent." *House v. Bell*, 547 U.S. 518, 536 (2006) (citation omitted).

12

C.     **Review of Non-Defaulted Claims**

Where state courts have addressed a claim on the merits, federal habeas review of the decision is limited by § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Williams v. Taylor*, 529 U.S. 362 (2000); *Johnson v. Williams*, ___ U.S. ___, 133 S. Ct. 1088 (2013).  Under AEDPA, a federal habeas court accords a presumption of correctness to a state court's factual findings.  28 U.S.C. § 2254(e)(1).  Where a claim has been adjudicated on the merits in the state courts, this court may not grant relief on such claim unless it determines that the adjudication of the claim either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2); *see Premo v. Moore*, 562 U.S. ___, ___, 131 S. Ct. 733, 739 (2011).  "This is a 'difficult to meet,' *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786 (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)."  *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (citation and further quotation marks omitted).  When the last state court rendering judgment affirms without explanation, the federal courts are to presume that it rests on the reasons given in the last reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991); *Sweet v. Secretary, Dep't of Corr.*, 467 F.3d 1311, 1316-17 (11th Cir. 2006).

13

III.    DISCUSSION

A.    Claims 1 and 2 - Ineffective Assistance of Counsel

The bulk of Morris's habeas claims involve allegations that his counsel rendered ineffective assistance, primarily at trial but also on direct appeal.  The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defense."  U.S. Const. amend VI.  "It has long been recognized that the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).  A claim of ineffective assistance of counsel can be established upon a showing that the (1) "counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.  In a habeas corpus action, the petitioner generally carries the burden to establish both components.  *Lawhorn v. Allen*, 519 F.3d 1272, 1293 (11th Cir. 2008) (citing *Atkins v. Singletary*, 965 F.2d 952, 958-59 (11th Cir. 1992)).

The Eleventh Circuit has explained:

> To establish a constitutionally deficient performance, the defendant must "identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment" to "show that counsel's representation fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 687, 690.  The "highly deferential" reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *id.* at 689, and recognize that cases warranting the grant of habeas relief based on an ineffective assistance claim "are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quotation and citation omitted). ... "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. ... Because "it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight," *Bell v. Cone*, 535 U.S. 685, 702 (2002), we must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the

14

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

*Lawhorn*, 519 F.3d at 1293-94.

Once constitutionally deficient performance is established, the petitioner generally must also prove prejudice. To do so the petitioner must convince the court "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. While a petitioner need not show that counsel's deficient conduct "more likely than not altered the outcome of the case," it is not enough for the petitioner to show that counsel's errors merely had "some conceivable effect on the outcome of the proceeding." *Id.*, 466 U.S. at 693. A court may decline to reach the performance prong if convinced that the prejudice prong cannot be satisfied in any event. *Boyd v. Allen*, 592 F.3d 1274, 1293 (11th Cir. 2010).

### 1.     Claims 1(a) and 1(b)

The State argues that almost all of Morris's ineffective-assistance claims are unexhausted and procedurally defaulted. However, the State acknowledges that Morris did exhaust and did not otherwise default Claims 1(a) and 1(b), as designated above, because he raised them in his Rule 32 petition, in the subsequent appeal, and then sufficiently presented them in his petition for certiorari in the Alabama Supreme Court. In Claim 1(a), Morris contends that his trial counsel was ineffective for failing to move to suppress or object to the introduction of a videotape showing him at the Wal-Mart on the date of the robbery. In Claim 1(b), Morris argues that his trial counsel was ineffective for failing to obtain medical records and present testimony from Morris's physician to show that he could

not have wielded a knife in his right hand in the manner testified to by the Wal-Mart loss prevention employee, Anthony Woods.  These claims are addressed in turn.

With respect to what now stands as Claim 1(a), Morris alleged in his Rule 32 petition that "trial counsel rendered ineffective assistance of counsel, when the counselor failed to suppress or object to the use of the video tape that showed no criminal acts by the petitioner and was used to prejudice the jury.  (R. 39) (R. 44)."  (Doc. 5-7 at 23).  In the argument section of his Rule 32 petition, Morris further stated with regard to this issue:

> Under any normal practice no counsel would have not made a [m]otion of suppression after the pre-trial review of this put together video tape that was playing at different speeds.  R. 43. This tape showed no criminal acts of James while in the [d]epartment [s]tore of Wal-Mart.  Based on the record before this Court, the only use of this video was to show James enter Wal-Mart exchange a watch and then [exit] Wal-Mart, as this same tape would have shown hundreds of other individuals do on that same day, the only effect the video had was to prejudice the jury.  This could not be reasonable trial strat[e]gy actually pursued by counsel.  There was not any reasonable justification for the [a]ttorney's conduct, and counsel deficient representation in this issue rendered the result of the [t]rial against James fundamentally unfair or unreliable, and his performance failed to meet the [s]tandard of reasonableness under prevailing professional norms.  *Rhode v. Hall*, [582 F.3d 1273 (11th Cir. 2009)].

(Doc. 5-7 at 25-26).

In affirming the trial court, the Alabama Court of Criminal Appeals held that these allegations were insufficient under ALA. R. CRIM. P. 32.3 and 32.6(b) to carry Morris's burden to plead specific facts showing that he was entitled to relief.  (*See* Doc. 5-11 at 3, 5).  In particular, the court concluded that Morris had merely made a "conclusory allegation" that the introduction of the videotape had unfairly prejudiced him and thus failed to show a *Strickland* violation.  (*Id.*)  That disposition constitutes a ruling on the merits.  *See McNabb v. Commissioner Ala. Dep't of Corr.*, 727 F.3d 1334, 1343 (11th Cir. 2013); *Borden*, 646 F.3d at 815.  Thus, the issue on federal habeas review is whether,

accepting as true the *facts* pled by *Morris* in state court, the decision of the Alabama Court of

Criminal Appeals regarding a lack of prejudice constitutes an unreasonable application of *Strickland*

and its progeny under 28 U.S.C. § 2254(d).  *See Borden*, 646 F.3d at 815.  Morris has not done so.

Even now Morris makes only a bald claim that the videotape somehow unfairly prejudiced him

without explaining specifically how that is so.  Morris does not dispute that he was present, and, by

his own account, the recording does not show him engaging in criminal acts, so it is entirely unclear

why he conceives it to be so damaging.  Even under a *de novo* review, Morris has failed to show

prejudice.  Moreover, the record shows that Morris's counsel did, in fact, object to at least portions of

the videotape.  (R. 39).  While Morris now suggests that his counsel should have objected on

additional grounds, Morris also fails to show that counsel's performance fell below the standard of

competent counsel under *Strickland*.  This claim is without merit.

　　　With regard to what is now enumerated as Claim 1(b), Morris alleged in his Rule 32 petition

that his trial counsel was ineffective because he "failed to enter medical records favorable to the

petitioner, showing it was impossible to hold a knife in his right hand as the witness William Anthony

Woods testified. (R. 37)."  (Doc. 5-7 at 23).  In a related vein, Morris alleged that trial counsel was

ineffective for failing to call witnesses, one of whom was "Doctor Ken Chandler."  (*Id.* at 24).  In the

argument section of his Rule 32 petition, Morris further alleged in relevant part:

> James provided his counsel with medical records issued by his Doctor Ken Chandler
> who[se] care James has been under for some time.  The medical records proved it was
> medic[ally] impossible for James to hold a knife in the manner William Anthony
> Woods testif[i]ed (R. 37) that James held the knife in his right hand, because of the
> medical condition James suffers in his right hand.  The [c]ounsel failed to present this
> favorable cumulative evidence or evidence compatible with the defense strategy.

17

(*Id.* at 26).  The Alabama Court of Criminal Appeals held that the trial court correctly found that these allegations were also insufficient under ALA. R. CRIM. P. 32.3 and 32.6(b) to carry Morris's burden to plead specific facts showing that, but for the failure to introduce medical records or call Dr. Chandler as a witness, there is a reasonable probability that the outcome of Morris's trial would have been different.  (*See* Doc. 5-11 at 3, 5).  Again, that is a decision on the merits, so Morris must show that it represents an unreasonable application of Supreme Court precedent in light of the facts Morris pled in his Rule 32 petition.  *See Borden*, 646 F.3d at 815.  As explained below, Morris has not done so.

Morris has never produced *any* medical records, either in his Rule 32 proceedings or in this court.  Morris also has never presented an affidavit from Dr. Chandler setting forth the substance of any testimony he might have been willing to provide.  Nor has Morris provided any excuse for why he has not produced records or an affidavit from Dr. Chandler.  Instead, Morris has merely made bald assertions about what his medical records supposedly show and what Dr. Chandler's testimony supposedly would have been.  A defendant's own self-serving speculation that missing witnesses or evidence would have been helpful is insufficient to carry a petitioner's burden to justify habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001); *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Streeter v. United States*, 335 Fed. App'x 859, 864 (11th Cir. 2009); *Mills v. United States*, 2013 WL 61455550, at *4 (M.D. Ala. Nov. 21, 2013); *Jones v. Thomas*, 2012 WL 5265771, at *21 (N.D. Ala. May 8, 2012).

Even taking the allegations of Morris's Rule 32 petition at face value, it is still unclear just what he claims medical records or testimony might have shown or precisely how, or even whether, they might have impeached the testimony of Anthony Woods, the Wal-Mart loss prevention employee.  Morris stated in his Rule 32 petition that the records would have shown that it was

18

"impossible" for him to hold a knife in his right hand "in the manner" Woods testified.  But Morris

failed to explain exactly what he means by that.  Morris did not expressly deny that he can hold a

knife in his right hand.  Rather, he claimed only vaguely that he could not have held it "in the

manner" Woods said he did, without stating what it was about the "manner" Woods said that Morris

held the knife that is ostensibly inconsistent with his physical capabilities.  Likewise, Morris alleges

in this court that the medical evidence would have shown that he "does not have full use of his right

hand" and that "he is unable to use [his right hand] as an ordinary person would."  (Pet. at 11; *see

also id.* at 5, ¶¶ 12B, 12D; *id.* at 15-16).  Again, Morris still has not denied that he can hold a knife in

his right hand, and Morris does not claim that there is *anything* wrong with his *left* hand.  Woods did

unambiguously testify that Morris held the knife in his right hand.  (R. 37, 48, 56).  However, even

assuming Morris is claiming that medical evidence supports that he could not have done so, it seems

highly doubtful, given the entirety of the evidence against Morris, that the jury's guilty verdict hinged

upon Woods's testimony about which hand Morris used to hold the knife.

    Further, it has since become clearer that what Morris is, in fact, challenging is Woods's

testimony that he considered Morris to be threatening him despite the closed position of the knife

blade in part because Woods thought Morris could have flicked the blade open in "a split second"

with his thumb, a maneuver that Woods demonstrated with the knife twice while on the stand.  (R.

60-62, 64).  In his Addendum, Morris argues at some length that Dr. Chandler's records and

testimony would have confirmed that he suffers from a medical condition that precluded him from

being able to quickly open the blade with his right hand in the fashion Woods showed.  (Add. at 9-

12).  Even assuming that to be so, however, such evidence would not have conflicted with Woods's

testimony because he did not claim that Morris actually did flick the blade open; Woods merely stated

19

and showed why he *thought* that Morris could have done so.  Evidence that Morris could not have opened the knife with one hand also would not have supported that he did not commit robbery in the first degree under Ala. Code § 13A-8-41.  Again, Morris does not claim that there was anything wrong with his *left* hand such that he could not have used it to hold or even quickly open the knife in the just the way Woods showed.  Beyond that, Morris's conviction simply does not depend on whether he was, in fact, capable of opening the knife with one hand or even whether he was otherwise able to carry out any alleged threatened use of force with it.  Under Alabama's first-degree robbery statute, it is sufficient that the *victim* had an honest and reasonable *belief*, based on what the defendant showed and otherwise threatened, that the defendant was in possession of a deadly or dangerous weapon and was capable of carrying out a threat to use it.  *See Herndon v. State*, 563 So. 2d 1065, 1068 (Ala. 1990) (unloaded gun is a deadly weapon for purposes of § 13A-8-41); *Pigg v. State*, 925 So. 2d 1001, 1003-04 (Ala. Crim. App. 2005) (evidence supported conviction for robbery in the first degree based on note handed to bank teller threatening to kill everyone in the bank, even if defendant was unarmed); *Rice v. State*, 620 So. 2d 140, 141 (Ala. Crim. App. 1993) ("In a prosecution for first-degree robbery, the robbery victim does not actually have to see a weapon to establish the element of force; his or her reasonable belief that the robber is armed is sufficient.") (quoted with approval in *Stallings v. State*, 793 So. 2d 867, 868 (Ala. Crim. App. 2000), and *Porter v. State*, 666 So. 2d 106, 108 (Ala. Crim. App. 1995)); *Goodwin v. State*, 641 So. 2d 1289, 1293 (Ala. Crim. App. 1994) (evidence was sufficient to convict of first-degree robbery where defendant or codefendant asked victim "Is your life worth $40?" together with evidence that victim believed defendant was holding gun, even if defendant was in fact holding a stick).  The Alabama courts have also recognized that a pocket knife may be a dangerous instrument for purposes of the first-degree robbery statute.

*See Goodgame v. State*, 593 So. 2d 153, 154 (Ala. Crim. App. 1991). Woods told the jury that he took Morris to be threatening him and Johnson because Morris prominently displayed the knife and stated to them multiple times in a manner Woods took as threatening that they not touch him. Woods further explained that he feared that Morris could have quickly opened the blade with his thumb, and Woods's demonstration to the jury that the blade generally could be opened that way tended to support that his belief was a reasonable one. Given that it is the victim's perception that matters, the fact that Morris may have suffered from a medical condition unknown to the victim is essentially beside the point.

Finally, the court would also note that the jury was, in fact, advised by Sergeant Archer at some length that Morris had suggested to police that he had some kind of "handicap or disability" or that "his right hand was crippled in some form." (R. 99) In fact, Archer even admitted that Morris "may have indeed had some limited use of his [right] hand." (R. 100) Despite that, the jury still convicted Morris of first degree robbery. The Alabama courts' rejection of this claim based on a failure to show prejudice under *Strickland* was not unreasonable under § 2254(d).

### 2.  Claims 1(c) through 1(j)

In these claims, Morris maintains that his trial counsel was ineffective based on allegations that counsel: failed to call as a witness the woman who was working at the Wal-Mart jewelry counter (Claim 1(c)); failed to call other witnesses, namely, Nanette Mercer Parcel, Laketta Morris, and Lotoya Morris (Claim 1(h)); failed to object to the introduction of two pair of sunglasses and two watches (Claim 1(g)); failed to object to testimony by a police officer that the van Morris was riding in when he was arrested had been reported stolen (Claim 1(e)) or to testimony that a "joint" was found inside the van (Claim 1(f)); elicited further testimony about the van being reported stolen and

about a marijuana cigarette and other drug paraphernalia being found in the van (Claims 1(i) and (j));

and allegedly made only one objection at trial.  (Claim 1(d)).  The State acknowledges that Morris

raised these claims in his Rule 32 petition and on that appeal to the Alabama Court of Criminal

Appeals.  The State contends, however, that all of these claims are unexhausted and procedurally

defaulted because Morris failed to raise them in his ensuing petition for certiorari review in the

Alabama Supreme Court.

For his part, Morris has not specifically disputed the State's assertion that he has not

exhausted these claims.  To have done so, Morris had to "fairly present" them to the Alabama

Supreme Court in his certiorari petition.  *See Boerckel*, 526 U.S. at 842-45; *Mason v. Allen*, 605 F.3d

1114, 1119 (11th Cir. 2010).  As noted above, the State has conceded that Morris did exhaust his

ineffective-assistance claims insofar as they were based on allegations that trial counsel should have

challenged the admission of the videotape and should have presented evidence regarding Morris's

limited use of his right hand.  However, "a general allegation of ineffective assistance or a specific

allegation of ineffective assistance wholly unrelated to the ground on which [another] claim

ultimately depends will [not] immunize a petitioner from a finding of procedural default."  *Ogle v.*

*Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) (quoting *Francis v. Spraggins*, 720 F.2d 1190, 1193

(11th Cir. 1983)); *see also Lucas v. Secretary, Dep't of Corr.*, 682 F.3d 1342, 1354 (11th Cir. 2012);

*Kelley v. Secretary for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

Morris did argue in his certiorari petition specifically about his trial counsel's failure to object

to the videotape and his failure to marshal medical evidence related to the limited use of his right

hand.  However, Morris did not argue any specifics regarding any other ineffective-assistance-of-

counsel claims or cite any facts underlying them.  (*See* Doc. 5-12).  Rather, he only asserted more

22

generally that both the trial court and the Alabama Court of Criminal Appeals had erred by holding that his ineffective-assistance claims were subject to summary dismissal because he had not satisfied his burden to plead specific facts in his Rule 32 petition showing he was entitled to relief, as required by ALA. R. CRIM. P. 32.3 and 32.6(b).  (*Id.*)  As a result, the court concludes that Morris failed to exhaust Claims 1(c) through 1(j), alleging that his trial counsel was ineffective.  *See Hunt*, 666 F.3d at 730-31,

  While Morris has not disputed that he did not exhaust these claims, he does insist that this court must consider the merits of these and any other unexhausted or procedurally defaulted claims on the theory that he is actually innocent.  The Supreme Court has recognized that habeas claims that are barred from review in federal court because they were defaulted in state court may nonetheless be reviewed on the merits pursuant to a "fundamental miscarriage-of-justice" exception.  *House*, 547 U.S. at 536.  Under that exception, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*,  513 U.S. 298, 327 (1995)).  This standard "is demanding and permits review only in the 'extraordinary' case." *Schlup*, 513 U.S. at 327 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).  "'[T]o be credible' a gateway claim requires 'new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 324).  The district court then considers "all of the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327-28 (internal quotation marks and further citation

23

omitted)).  "Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 329)).  In order to warrant an evidentiary hearing, a petitioner must make "a threshold showing of actual innocence. The timing of the submission is relevant, as is the likely credibility of the affiants."  *Sibley v. Culliver*, 377 F.3d 1196, 1206 (11th Cir. 2004) (citation omitted).

In support of his claim of actual innocence, Morris argues that the State's evidence at trial was insufficient to convict him of first degree robbery because it allegedly failed to show that he threatened Woods or Johnson with the knife.  Morris also cites his own protestations denying that he stole any merchandise from Wal-Mart or threatened anyone with the knife.  Rather, Morris suggests, again, based only on his own assertions, that the evidence against him was concocted by Woods, and perhaps others, because of racial animus.  Morris also claims that testimony of other witnesses and other evidence not presented at trial would support his version of events, although Morris does not present any such evidence or affidavits from potential witnesses.

Morris further asserts that he has "new evidence" showing he is actually innocent.  He first cites "the fact that Wal-Mart employs a 'Quota Apprehension' system in which all of Wal-Mart's Loss Prevention Associates/employees, such as Willard Anthony Woods, must report to district supervisors the number of apprehensions [they] make[ ] per month."  (Add. at 41).  Petitioner claims that Woods's performance score based on his number of apprehensions is "a factor in determining [his] raises and promotions."  In support of these allegations, Petitioner cites to *Wal-Mart Stores, Inc. v. Goodman*, 789 So. 2d 166 (Ala. 2000), a decision of the Alabama Supreme Court in which the plaintiff offered evidence that Wal-Mart had then adhered to such a policy in support of a claim for malicious prosecution.  (Add. at 41-44; *see also* Doc. 11, ¶¶ 4-5); *see also* 789 So. 2d at 172, 181-82

& n. 10.  Petitioner argues that this "system" or policy gave Woods "motivation, incentive, and a personal and financial interest in making false allegations against this Petitioner."  (*Id.* at 41-42). Second, Petitioner claims that there is also "new evidence" that "Wal-Mart has a history of discrimination against black people, minorities and women, and racial bias."  (Add. at 42).  To prove this, Petitioner attaches as an exhibit an Associated Press story, published in some unidentified newspaper on an unspecified date,[9/] that refers generally to "a series of problems the retailer has had in its dealings with minorities and women" and "several past instances of black customers claiming they were treated unfairly at WalMart stores."  (Add. at 65).  Petitioner similarly cites several other reported court opinions involving individuals, including racial minorities, who claimed that Wal-Mart had falsely accused them of shoplifting.  (*Id.* at 44-49 (citing *Wal-Mart Stores v. Jones*, 533 So. 2d 551 (Ala. 1988), *Higgins v. Wal-Mart Stores, Inc.*, 512 So. 2d 766 (Ala. 1987); *Murray v. Wal-Mart, Inc.*, 874 F.2d 555 (8th Cir. 1989)); *Singleton v. St. Charles Parrish Sheriff's Dep't*, 306 Fed. App'x 195 (5th Cir. 2009); *Ex parte Shaver*, 894 So. 2d 781 (Ala. 2004); *Ex parte Aaron*, 913 So. 2d 1110 (Ala. 2005); and *Wal-Mart Stores, Inc. v. Patterson*, 816 So. 2d 1 (Ala. 2001)).  Morris asserts that had such "new evidence been presented at [his] trial, there is a substantial likelihood or probability that [he] would not have been convicted."  (Add. at 42).  The court disagrees.

Morris's cited materials do not come close to establishing his actual innocence.  First, to the extent that Morris challenges the sufficiency of the evidence to convict him, the Supreme Court has recognized that "'actual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Moreover, while Morris does assert generally that the

---

[9/]The court's own internet research revealed that the newspaper article appeared in March 2010. http://www.aolnews.com/2010/03/20/arrest-made-in-WalMart-racial-comment-case/.

evidence was insufficient to convict him, he has never expressly invoked the Due Process Clause or cited any case authorities that might suggest he is raising a federal claim under *Jackson v. Virginia*, 443 U.S. 307 (1979).  Even assuming that allusions to evidentiary insufficiency are sufficient to raise a *Jackson* claim, at least for purposes of excusing a procedural default, *see, e.g.*, *Peoples v. Campbell*, 377 F.3d 1208, 1230-31 (11th Cir. 2004), Morris is entitled to no relief on that theory.

Viewing the trial evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, the evidence supports the following:  Woods witnessed Morris shoplift a watch and a pair of sunglasses from the jewelry department.  (R. 30-34).  After Morris and his female companion, Pannell, exited the store without paying for the items, Woods and another loss prevention employee, Buddy Johnson, approached them in the parking lot, identified themselves as Wal-Mart security, and asked Morris to come back inside the store to discuss the merchandise he had on him.  (R. 34-36).  Morris refused, saying, "I don't got nothing.  All I got is this," at which time he reached into his right pocket took out a black-handled knife and held it in his right hand.  (R. 36-37).  That prompted Woods and Johnson to "jump back."  (R. 45).  As he held the knife, Morris ordered Woods and Johnson several times "in an ill mannered voice" not to touch him, even though they had not put their hands on him.  (R. 36-38, 44-45, 49, 54-55, 59).  Woods acknowledges that Morris held the knife with the blade in a closed position and that he never tried to open it.  (R. 55-56).  Woods also admitted that Morris did not "lunge" or "swing" at them or make any express threat to "cut" or "stab" them.  (R. 61-62). Woods denied, however, that Morris had simply "pull[ed] [the knife] out to show it to" them.  (R. 48-49).  Rather, Woods testified, Morris "had it clinched" (R. 48-49) "firmly" (R. 60) and held it in such a way that "he made sure that we [*i.e.*, Woods and Johnson,] knew he had the knife in his hand" (R. 37).  Woods said that he "took [Morris's actions] as a threat toward [him]."  (R. 49).

26

Further, Woods related that when Morris and Pannell walked away from the confrontation, Morris continued to grasp the knife until he entered their vehicle. (R. 38). After Pannell got in the driver's seat and Morris sat in the front passenger seat, the vehicle headed around the back of the store, came out on the opposite end of the shopping center buildings, and then exited the parking lot. (R. 39-41, 46-48). Almost immediately thereafter, the police stopped the vehicle based on a radio report of the alleged robbery. (R. 48, 69-72). Searching the vehicle, the police found the knife in the passenger side door next to where Morris was sitting. (R. 72-73). That search did not yield either the watch or sunglasses that Woods claimed he saw Morris take. (R. 75-76). However, after being told that the vehicle in which Morris and Pannell were traveling had driven behind the Wal-Mart building before exiting the shopping center, another police officer, John Harris, searched behind the store and found both a watch and sunglasses in "brand new condition" (R. 93), lying on the ground. (R. 81-83).

Under *Jackson*, it is up to state courts to define the contours of the substantive elements of a criminal offense under state law; the federal courts are merely to determine under federal due process standards whether evidence presented would allow a rational jury to infer the existence of each required element. *See Coleman v. Johnson*, ___ U.S. ___, ___, 132 S. Ct. 2060, 2062 (2012); *see also Fulghum v. Ford*, 850 F.2d 1529, 1533 (11th Cir. 1988) ("Federal habeas claims 'must be gauged in the light of the applicable [state] law defining the element'" (quoting *Jackson*, 443 U.S. at 324)). As explained by the Alabama Court of Criminal Appeals on Morris's direct appeal, pursuant to §§ 13A-8-41 and 13A-8-43, Ala. Code 1975, a person commits first-degree robbery if:

> [I]n the course of committing a theft he ... [u]ses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or ... [t]hreatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or

escaping with the property[, § 13A-8-43, Ala. Code 1975, and] [i]s armed with a
deadly weapon or dangerous instrument[, § 13A-8-41(a)(1), Ala. Code 1975.

(Doc. 5-6 at 2).   Morris has disputed whether the evidence supports either that he threatened Woods

and Johnson with the knife or that the knife as used constituted a deadly weapon or dangerous

instrument.   In rejecting Morris's insufficiency claim on direct appeal, however, the Alabama Court

of Criminal Appeals held, that

> the evidence presented at trial was sufficient to show that Morris robbed the Wal-Mart
> store while armed with a knife.   The evidence was also sufficient to show that the
> knife used by Morris to threaten the Wal-Mart employees was either a deadly weapon
> or a dangerous instrument.   *Goodgame v. State*, 593 So. 2d 153, 154 (Ala. Crim. App.
> 1991) (holding that a pocket-knife may be a deadly weapon); *Cline v. State*, 571 So. 2d
> 368, 371 (Ala. Crim. App. 1990) ("While a pocketknife may not be deadly per se and
> ordinarily has lawful functions and uses, it may or may not be deemed a deadly
> weapon, depending on the manner of its use."). Accordingly, the question of whether
> the knife in this case was a deadly weapon was properly left for the jury's
> determination.   *Goodgame*, 593 So. 2d at 154.

(Doc. 5-6 at 6).

    To the extent that Morris might be seeking habeas relief based on a freestanding *Jackson*

claim, the rejection of Morris's insufficiency claim on direct appeal is entitled to deference under

§ 2254(d).   *See Coleman*, 132 S. Ct. at 2062.   Even under *de novo* review, this court agrees that a

rational trier of fact could have found the essential elements of first-degree robbery beyond a

reasonable doubt.   *See Cook v. McNeil*, 266 Fed. App'x 843, 846 (11th Cir. 2008); *Brown v.

Secretary, DOC*, 2013 WL 2147794, at *6-7 (M.D. Fla. May 16, 2013); *Ballard v. Wise*, 2012 WL

7658646, *3-4 (M.D. Ala. Dec. 18, 2012); *see also Alford v. State*, 418 S.E.2d 397, 398 (Ga. App.

1992).   "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence

presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate

facts.'"   *Johnson*, 132 S. Ct. at 2065 (quoting *Jackson*, 443 U.S. at 319).   The jury here found that

28

Morris threatened Woods and Johnson with the knife in order to steal merchandise from the store and that the knife was a dangerous instrument.  "The only question under *Jackson* is whether that finding was so unsupportable as to fall below the threshold of bare rationality."  *Id.*  It was not.  Therefore, Morris's argument that the evidence was insufficient to convict him of first-degree robbery is due to be rejected, whether raised as an independent basis for habeas relief or as a means to obtain review of other, defaulted claims under an "actual innocence" theory.  *See Peoples*, 377 F.3d at 1230-31.

In a similar vein, Morris suggests in his Addendum in connection with his actual innocence claim that the evidence that he stole a single watch belonging to Wal-Mart could not support his conviction on *two* counts of robbery.  (*See* Add. at 35-36 ("In January 2008, [the] Morgan County District Attorney ... split a single alleged crime by pursuing a two count indictment against ... the Petitioner"); *see also id.* at 16-17).  However, in order to excuse his procedural default, Morris must demonstrate factual innocence, not merely that he is innocent in a technical or legal sense.  *See San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011).  His instant argument, which is in the nature of a double jeopardy claim, would show only that he is legally innocent and is thus insufficient to

establish the miscarriage-of-justice exception.[10/]  *See Selsor v. Kaiser*, 22 F.3d 1029, 1034-35 (10th

Cir. 1994); *Wallace v. Lockhart*, 12 F.3d 823, 826-27 (8th Cir. 1994).

Next, Morris's own self-serving and uncorroborated assertions that he did not steal any

merchandise, that he did not threaten Woods or Johnson with the knife, and that Woods allegedly

made racist statements and threats are not at all compelling.  They do not constitute new reliable

---

[10/]Although the court rejects this argument to the extent it is offered to excuse a procedural default, that is not to say that the court does not have doubts about whether Morris was properly sentenced for more than one robbery.  Morris was indicted, convicted, and sentenced on two counts of robbery based on the theory that his theft of a single item, a watch belonging to Wal-Mart, gave rise to two offenses because he wielded a knife in front of two distinct "victims," *i.e.*, the Wal-Mart security employees, Woods and Johnson, when they followed him into the parking lot and attempted to retrieve merchandise Morris had shoplifted. (*See* Doc. 5-1 at 23).  Morris's counsel does not appear to have contested that theory; it certainly was not an issue raised on appeal.  It is at least arguable, however, that Morris might have prevailed on such a claim had it been properly raised and preserved. *See generally* Ala. Code § 13A-8-43 (defining robbery as an actual or threatened "use of force against the person of the owner [of property] *or any person present*" in the commission of a theft (emphasis added)); *also compare Strickland v. State*, 92 So. 3d 179 (Ala. Crim. App. 2011) (holding that defendant committed only one robbery where he and accomplices took from the store clerk property belonging to her and other property belonging to her employer; opinion noted that two customers were also threatened with a shotgun, but no property was taken from them, and defendant was not indicted for robbing them); *with Burnett v. State*, ___ So. 3d ___, ___, 2013 WL 6703482, at *2-3 (Ala. Crim. App. Dec. 20, 2013) (holding that four counts of robbery were authorized where the defendant took property belonging to four individual store employees in a single transaction); *see also generally* H. Mitchell Caldwell & Jennifer Allison, *Counting Victims and Multiplying Counts: Business Robbery, Faux Victims, and Draconian Punishment*, 46 Idaho L. Rev. 647 (2010).  While Morris received concurrent sentences on the two counts, if the second count were deemed to violate double jeopardy, he still would have been entitled to be resentenced because the second felony could affect parole eligibility and habitual offender sentencing in the future.  *See Moore v. State*, 709 So. 2d 1324, 1326 (Ala. Crim. App. 1997).  Nonetheless, Morris has not argued in this court that his conviction violated the Double Jeopardy Clause of the Fifth Amendment nor that his counsel's failure to raise and preserve a claim that his indictment was multiplicitous or violated state or federal double jeopardy principles amounted to ineffective assistance under the Sixth Amendment.  Even if Morris amended his habeas petition to include such claims, his failure to raise them in the Alabama courts would render them procedurally defaulted.  However, it appears that Alabama courts generally treat double jeopardy violations as jurisdictional, suggesting that there is at least a possibility that Morris still might pursue the matter in state court in another Rule 32 petition.  *See Ex parte Benefield*, 932 So. 2d 92, 93-94 (Ala. 2005); *McRath v. State*, ___ So. 3d ___, ___, 2013 wl 5506652, at *5 (Ala. Crim. App. Oct. 4, 2013).

evidence of actual innocence, particularly given (1) that Morris could have given such testimony at trial but he knowingly and voluntarily chose not to take the stand, presumably because it would have allowed the State to alert the jury to his criminal record; and (2) that Morris purported to "apologize" and "accept [his] responsibility" at sentencing.  (R. 133).  *See Dickinson v. Masan*, 2014 WL 495363, at *3 (M.D. Ala. Feb. 6, 2014); *Alverson v. Boyd*, 2013 WL 4851682, *11-12 (N.D. Ala. Sept. 10, 2013); *Waites v. Cummins*, 2012 WL 5984688, at *2 (M.D. Ala. Oct. 15, 2012); *see also Johnson v. Romanowski*, 2012 WL 2884688, at *7 (E.D. Mich. July 13, 2012) (petitioner failed to make a prima facie showing of actual innocence based on his own affidavit where, at sentencing, he had apologized to the trial court and the victims for his actions).

Finally, Morris's "new evidence" regarding Wal-Mart's alleged adherence to a "quota apprehension" policy in connection with its loss-prevention efforts or Wal-Mart's alleged "history of discrimination against black people, minorities and women, and racial bias" do not make material headway towards establishing his actual innocence.  Morris fails to show even that, at the time of his offense, Woods was actually subject to the "quota apprehension" policy discussed in the Alabama Supreme Court's *Goodman* decision, which was by then approximately seven years old.  But even assuming that Wal-Mart did follow that policy, such evidence related to Wal-Mart's practices generally and anecdotal evidence of claims of race discrimination by other Wal-Mart employees at other store locations throughout the country is at very best only marginally relevant at all and fails to support that Morris is actually innocent in this particular case given the entirety of the evidence, including that presented at trial.  *Cf. United States v. Bass*, 536 U.S. 862, 863-64 (2002) (defendant claiming that he was subjected to selective prosecution failed to make a "credible showing" that "similarly situated individuals of a different race were not prosecuted" based on nationwide statistics

31

that the federal government charged blacks with a death-eligible offense more than twice as often as it charges whites and entered into plea bargains with whites more frequently; "Raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants"); *United States v. Armstrong*, 517 U.S. 456, 470 (1996) (holding that newspaper article, reporting that federal defendants charged with "crack" offenses were "being punished far more severely than if they had been caught with powder cocaine, and almost every single one of them is black," "was not relevant to an allegation of discrimination in decisions to prosecute" in the defendant's case); *McClesky v. Kemp*, 481 U.S. 279, 297 (1986) (capital defendant failed to raise an inference that the jury in his case acted with discriminatory intent, based on statistical study tending to show that juries in Georgia generally were more likely to impose the death penalty against African-Americans than whites); *Howard v. Wolfe*, 199 Fed. App'x 529, 533-34 (6th Cir. 2006) (petitioner convicted of child endangerment based on evidence that victim's injuries were consistent with shaken baby syndrome failed to show actual innocence by citing medical journal article that petitioner claimed called into question the medical basis of the prosecution's theory but "did not address the particular facts posed by the case at hand"). Because Morris fails to make a prima facie showing of actual innocence, he is not entitled to a merits review of his defaulted claims based on the "miscarriage-of-justice" exception.

Even assuming Morris has not defaulted these claims, they would not entitle him to habeas relief. Claims 1(c) through 1(j) were all rejected on the merits by the Alabama Court of Criminal Appeals in the Rule 32 appeal.  Accordingly, Morris would have the burden to show that the disposition of these claims was unreasonable under § 2254(d).  He has not done so.  First, in Claims 1(c) and 1(h), Morris contends that his counsel was ineffective for failing to subpoena certain witnesses in addition to Dr. Chandler.  In particular, Morris says that his counsel should have also

called the unidentified female employee working at the jewelry counter on the night of the offense;

Morris's girlfriend, Pannell; Laketta Morris; and Lotoya Morris.  While in state court, Morris did not

identify the substance of the testimony that any of these witnesses might have presented.  That alone

establishes that the rejection of this claim by the State courts was not unreasonable under § 2254(d).

Morris has also never supplied affidavits from any of them.  Instead, Morris has simply speculated

that they would have provided testimony favorable to him.  (*See e.g.* Add. at 25-28).  Again, that is

insufficient to carry his burden to show that his counsel's performance was deficient or that he

suffered prejudice under *Strickland*.  *See Johnson*, 256 F.3d at 1186-87; *Aldrich*, 777 F.2d at 636.

Next, in Claim 1(g), Morris contends that his counsel should have objected to the State's

introduction of two pair of sunglasses and two watches into evidence.  In support, Morris initially

raised only the fact that the testimony supported that he stole only one pair of sunglasses and one

watch, not two of each.  In his Addendum, Morris also pointed out that the two robbery counts in the

indictment upon which he was ultimately tried alleged that he stole only a single watch belonging to

Wal-Mart and said nothing about sunglasses.  (*See* Add. at 18-23; Doc. 5-1 at 23).  He claims that this

evidence of uncharged criminal acts unfairly prejudiced him before the jury.

As a threshold matter, the record reflects that, while the state trial court did admit into

evidence two different watches as trial exhibits, the court admitted only one pair of sunglasses, not

two.  (R. 4).  Further, an objection to the evidence related to the sunglasses or the watches would have

been futile.  The Alabama Court of Criminal Appeals has stated:

> "'Evidence of the accused's commission of another crime is admissible if such other
> crime is inseparably connected with or is a part of the *res gestae* of the now-charged
> crime.  This rule is often expressed in terms of the other crime and the now-charged
> crime being parts of one continuous transaction or one continuous criminal
> occurrence.'" C. Gamble, *McElroy's Alabama Evidence* (3d ed. 1977), § 69.01(3).

> *See also Orr v. State*, 462 So. 2d 1013, 1015 (Ala. Crim. App. 1984). 'Evidence of other crimes is properly admissible as part of the res gestae if all of the criminal acts are part of one continuous criminal adventure by the same party occurring within a matter of hours. *Miller v. State*, 405 So. 2d 41 (Ala. Crim. App.1981). *See also Moseley v. State*, 357 So. 2d 390 (Ala. Crim. App. 1978); *Summers v. State*, 348 So. 2d 1126 (Ala. Crim. App.), *cert. denied*, 348 So. 2d 1136 (Ala. 1977).' *Pettaway v. State*, 494 So. 2d 884, 886 (Ala. Crim. App. 1986).

*Connell v. State*, 7 So. 3d 1068, 1085-86 (Ala. Crim. App. 2008) (quoting *Rowell v. State*, 570 So. 2d 848, 852 (Ala. Crim. App. 1990).  In Morris's case, the evidence related to both watches and the sunglasses was admissible as part of the *res gestae* of Morris's charged offenses, based upon his theft of the watch identified in the indictment.  Woods testified that he witnessed Morris shoplift both the watch described in the indictment and a pair of sunglasses in a single criminal transaction.  (R. 32-34).  Also, an issue was made at trial of the fact that, while Morris was allegedly shoplifting those two items, Pannell was also present in the jewelry department, obtaining a watch in exchange for an allegedly malfunctioning one previously purchased at Wal-Mart.  (R. 52-53, 62-64, 66-67, 92-95).  Accordingly, it was appropriate to admit evidence that a new watch with a case was found in a Wal-Mart bag during the search of the vehicle in which Morris and Pannell were driving (R. 74) in order to show the sequence of events on the night in question and to make clear that the other watch admitted in evidence later, recovered along with the sunglasses from behind the store, was not the watch that Pannell had legally received.  (R. 92-94).  Morris cannot show deficient performance or prejudice under *Strickland*.  *See Thomas v. Jones*, 891 F.2d 1500, 1504-05 (11th Cir. 1989) (counsel was not ineffective for failing to object to evidence that was admissible as part of *res gestae*); *see also Gomes v. Brady*, 564 F.3d 532, 540 (1st Cir. 2009).

Next, in his grounds now enumerated as Claims 1(e), (f), (i), and (j), Morris alleged in his Rule 32 petition as follows:

34

   5.   The [trial] counsel rendered ineffective assistance ... when counsel did not object to the State leading Officer Walter Segars to testify that the van James Morris was stop[ped] in was reported stolen, which testimony prejudice[d] the jury and James Morris was never charged with this criminal act.  (R. 77).

   6.   The trial counsel rendered ineffective assistance ... when trial counsel did not object to testimony of Walter Segars about finding a [marijuana] joint ... in the van James Morris was stop[ped] in and arrested, [where Morris was] never charged for this criminal act which was used to prejudice the jury against [Morris].  (R. 74).

   * * *

   9.   The trial counsel rendered ineffective assistance ... whe[n] trial counsel [led Sargeant] Rick Archer into testimony of a stolen van James Morris was arrested in and [of a] marijuana cigarette [being] found in the van which was [conduct for which] James Morris was not charged and was prejudic[ial] to [Morris before] the jury.  (R. 96).

   10.   The trial counsel rendered ineffective assistance ... when trial counsel [led] and questioned Rick Archer about drug paraphernalia being found in the van James Morris was arrested in [and] that was used to prejudice the jury.  (R. 97).

(Doc. 5-7 at 23, 24).  In the argument section of his Rule 32 petition, Morris further asserted in

relevant part:

   The defense counsel[']s deficient performance prejudiced the defense and the jury with testimony from the witness Walter Segars.  The defense counsel failed to object to this testimony [and thereby] denied James Morris his rights to a fair trial before the Circuit Court of Morgan County.  [Morris] was never indicted or charged with [stealing a] van or [possessing] a controlled substance.  Therefore, that testimony can only be viewed as serious error as to deny [Morris] a fair trial.  (R. 74) (R. 77).

   Then as stated in Issue[s] 9 and 10, the defense counsel on cross of Rick Archer continued to [prejudice] the jury against [Morris] with questions about criminal acts and drug paraphernalia being found in the stolen van.  Under no circumstances would any reasonable attorney [have] made this unprofessional error and undermine the confidence in the outcome of this case.  (R. 96) (R. 97).  This issue alone is reversible error because counsel[']s deficient performance ... denied [Morris] a fair trial.

(Doc. 5-7 at 27-28).

The Rule 32 trial court rejected these claims in a single sentence, stating, "As to each of these claims, Petitioner has failed to plead specific facts indicating that, but for the admission of this evidence, there is a reasonable probability that the result of his trial would have been different." (*Id.* at 6). The Alabama Court of Criminal Appeals affirmed based on its agreement with the trial court's reasoning. (Doc. 5-11 at 4-5).

Morris alleged in his Rule 32 petition that he was unfairly prejudiced because counsel's errors allowed the jury to consider testimony that included multiple references to the fact that he was stopped in a van that was both reported stolen and contained marijuana and other drug paraphernalia. The state courts do not appear to have specifically contested that such evidence generally would not have been admissible, *see generally* ALA. R. EVID. 404(b)(1), but they concluded that Morris had not pled enough factual matter to support that the jury's consideration of that evidence undermined the reliability of the verdict. Indeed, the evidence that Morris shoplifted the watch and sunglasses was quite strong. Woods claims he witnessed Morris steal the items, and that was corroborated by testimony that police recovered a watch and sunglasses, both in brand new condition, from an area on the ground behind the Wal-Mart. That occurred soon after Woods and Johnson had confronted Morris with a shoplifting accusation and after Morris and Pannell's vehicle was seen driving behind the store immediately before exiting the shopping center. Likewise, there was no dispute that Morris at least pulled a closed knife out of his pocket and held it out in front of Woods and Johnson when they accused him of shoplifting. Rather, the only element of first-degree robbery that might have presented a close question was whether Morris had employed the closed knife to threaten Woods and Johnson in order to effectuate the theft. Determination of that issue hinged on Woods's testimony. Even so, the defense did not put on any evidence of an alternate theory of what occurred in the

36

parking lot exchange between Morris and Woods and Johnson, and there is no apparent basis in the record for the jury to have credited Woods's testimony as it related to seeing the shoplifting but rejected his testimony about what Morris said and did with the knife in the parking lot.  As such, the determination by the Alabama courts that the allegations in Morris's Rule 32 petition, that counsel's errors allowed the jury to consider testimony potentially suggesting that he had engaged in other, unrelated and non-violent criminal activity, does not rise to the level of an unreasonable application of Supreme Court precedent under § 2254(d) as it relates to establishing prejudice under *Strickland*. *See Gilliam v. Secretary for Dep't of Corr.*, 480 F.3d 1027, 1034 (11th Cir. 2007).

Moreover, a review of the full transcript shows that the performance of Morris's counsel was not deficient and further supports that Morris did not suffer prejudice.  The relevant testimony underlying these claims was supplied by two witnesses: Decactur Police Officer Walter Segars, who conducted the traffic stop of the vehicle Morris was riding in, and Sergeant Rick Archer, the lead investigator on the robbery case against Morris.  First, the prosecutor elicited testimony from Officer Segars on direct examination that included the following:

Q.    After you had confirmed the tag, what did you do?

A.    I initiated a traffic stop.

Q.    And did they stop?

A.    Yes, sir.

Q.    And who did you find inside?

A .    I found a white female and a black male.  The black male was Mr. Morris, and the -- correction -- the white female was Ms. Pannell.

* * *

Q.      And who was driving?

A.      Ms. Pannell.

Q.      And where was Mr. Morris located in the vehicle?

A.      The front seat, passenger's side.

Q.      And did you search the vehicle after they got out?

A.      Yes, sir.

Q.      And did you find anything in there that you retained?

A.      Yes, sir, found several objects.

Q.      What did you find?

A.      I found a knife laying in the passenger door, two other items –

Q.      Hang on a second.  Can you describe the knife that was in the passenger's door?

A.      Black knife.

                * * *

Q.      Did you collect the other two things?

A.      Yes, sir.

                * * *

Q.      What else did you find in the car?

A.      Behind the passenger's seat there was a cigarette box with a joint in it, and there was a Wal-Mart bag with several items in it. ...

(R. 71-74).  On cross-examination by Morris's counsel, Officer Segars's testified in relevant part:

Q.      Did you find out who the vehicle [you stopped] belonged to, who owned that vehicle?

A.      Not right then.  No, sir.

Q.      Did you find out at a later time?

A.      I believe the vehicle actually came back reported stolen.

Q.      Do you know who –

A.      No, sir.  I don't recall.

(R. 76-77).

Later, Morris's counsel cross-examined Sergeant Archer about the vehicle's ownership and

the drug paraphernalia as follows:

Q.      There has been some discussion about a vehicle that Mr. Morris – and who was
         the other individual with him?

A.      Nannette Pannell.

Q.      Ms. Pannell and him (sic) were stopped in.

A.      Yes.

Q.      Was that vehicle reported stolen or what was the status of that?

A.      I don't recall that.  If it was, it probably would have been turned over to the
         Property Division.  They work auto thefts and those type cases.  If there was a
         report about the vehicle being stolen, I didn't investigate that.  I don't recall
         any investigation about that.

Q.      To your knowledge was Mr. Morris ever charged with anything about stealing
         that vehicle?

A.      I don't know what his subsequent charges have been since this.  I haven't had
         any dealings with him since then.

Q.      There was a mention about a marijuana cigarette.  Do you know anything about
         whether anybody was charged with that?

A.      I don't recall if Ms. Pannell was charged or not.  I know there was (sic) several items of drug paraphernalia found in the vehicle and associated with both individuals.

Q.      Do you know which was associated with Mr. Morris?

A.      I believe he had some marijuana rolling papers in his possession?

Q.      Do you remember where it was?

A.      I think it was in his wallet, but I'm not exactly sure.

Q.      Were you with Mr. Morris —

[PROSECUTOR]:      Excuse me.  Judge, we will stipulate, if it will help resolve that question, that we didn't make any charges against Mr. Morris or anything other than this robbery.

THE COURT:          All right.

[DEFENSE COUNSEL]:  That is what I'm driving at.

[PROSECUTOR]:      [Ms. Pannell] was charged with possession of paraphernalia. Those were the only charges that were brought to my knowledge as a result of this.

Q.      The only other – Ms. Pannell was originally charged with robbery, is that correct, the codefendant?

A.      That is correct.

Q.      And her case was dismissed?

A.      It was.

(R. 95-98).  The above exchanges during the testimony of Segars and Archer were the only references to the vehicle potentially being reported stolen or that drugs or paraphernalia were found.

It will be assumed for present purposes that testimony suggesting that the vehicle in which Pannell and Morris were stopped had been reported stolen or that marijuana or drug paraphernalia

40

were found the vehicle would have been subject to exclusion, either because such evidence was irrelevant to guilt on the robbery charges, *see* ALA. R. EVID. 401-02; because it constituted improper character evidence, *see* ALA. R. EVID. 404; or because any probative value it might have had was substantially outweighed by the danger of unfair prejudice, *see* ALA. R. EVID. 403.  *See also, e.g., McMillian v. State*, 594 So. 2d 1253, 1267 (Ala. Crim. App. 1991); *Bradley v. State*, 577 So. 2d 541, 555 (Ala. Crim. App. 1990).  That being said, the prosecutor's question to Officer Segars that prompted his initial statement about a "joint" being found, *i.e.*, "What else did you find in the car?," was not itself necessarily objectionable.  *See Hawes v. State*, 112 So. 761, 762 (Ala. 1927) ("When there is nothing on the face of the question, or in the statement of examining counsel, to show that the answer will be irrelevant or illegal, the opposing party has no right to have the question excluded, and the trial court's refusal to exclude is not error.").  At the very least, the question was not so clearly objectionable or calculated to solicit inadmissible, unfairly prejudicial evidence that defense counsel's failure to object, in itself, fell outside the wide range of professionally competent assistance.  Further, once  the witness answered, defense counsel could no longer "object"; rather, the issue became what action, if any, counsel might seek to minimize the effect of the witness's statement.  *See Starr v. Starr*, 301 So. 2d 78, 83 (Ala. 1974); *Woodward v. State*, 123 So. 3d 989, 1022-23 (Ala. Crim. App. 2011); *Cassady v. State*, 563 So. 2d 53, 53 (Ala. Crim. App. 1990); *see also Evans v. Walker*, 242 Fed. App'x 649, 651 (11th Cir. 2007).  Morris's counsel chose to cross-examine Officer Segars in an effort to elicit testimony that Morris did not own the vehicle, which would, in turn, tend to support that the marijuana found in a cigarette box behind the passenger seat likewise did not belong to him.  On its face, that was a reasonable strategic choice.  Unfortunately for Morris, when his counsel asked Segars if he found who the vehicle belonged to, Segars replied, "I believe the vehicle actually came

back reported stolen." That answer was not responsive to the question, and there is nothing in the record or Morris's habeas application suggesting that such an answer should, or even could, have been reasonably anticipated by Morris's counsel.

Having been dealt that bad hand, Morris's counsel decided to press on with cross-examination of Sergeant Archer as well about the ownership status of the vehicle and the drugs found therein. While Morris complains that his trial counsel was ineffective for continuing that tack with Archer, the choice to do so was again an effort strategically undertaken to distance Morris from Officer Segars's remarks. Further, a review of the transcript reveals that Morris's counsel was, in fact, largely successful on that front, obtaining concessions favorable to the defense from both Archer and the prosecutor. In particular, Sergeant Archer denied recalling that the vehicle had been reported stolen or that there was any investigation into that matter. Likewise, in response to counsel's questioning, the prosecutor interjected that the State would stipulate that Morris was not charged with anything other than the robbery. In addition, the prosecutor indicated to the jury that the State had taken the position that Pannell, not Morris, was responsible for the drug paraphernalia. All in all, Morris's counsel's performance was not deficient, so these claims are due to be rejected on that ground as well.

In the habeas ground now identified as Claim 1(d), Morris asserted in his Rule 32 petition that his trial counsel was ineffective because he allegedly made only one objection during the course of the trial. Morris also sought to support this claim by stating in the argument section of that petition that his "case is full of questionable testimony and evidence that warr[anted] an objection from counsel." (Doc. 5-7 at 27). The Alabama courts also rejected this claim on the basis that Morris had "failed to plead any facts indicating that counsel's failure to offer additional objections constituted

professional error or that, but for this omission, there is a reasonable probability that the result of his trial would have been different." (*See id.* at 5; Doc. 5-11 at 4-5). Because Morris failed to identify what additional objections counsel supposedly should have made or what evidence might have been excluded, the merits rejection of this claim by the Alabama courts is plainly not unreasonable under § 2254(d). This claim is due to be denied as well.

### 3.      Claim 1(k) and 1(*l*)

In these claims, Morris argues that his counsel was ineffective for failing to provide him with a copy of a preliminary hearing transcript or failing to ensure that such a record was made (Pet. at 12-13) and by failing to provide Morris with otherwise unspecified "transcripts, motions, and brief's (sic) filed [in his case]" (Pet. at 12). Morris did not even hint at such claims in the Alabama courts, so they are unexhausted. And given that Morris has failed to establish his actual innocence, as discussed previously, these claims are also procedurally defaulted. Even if they were not defaulted, Morris has failed to show how he suffered prejudice as a result of these alleged omissions. These claims are due to be rejected.

### 4.      Claim 2

In what this court has identified as Claim 2, Morris contends that his appellate counsel was ineffective for failing to raise issues on direct appeal based on upon the alleged ineffectiveness of trial counsel. This claim also was not raised in the Alabama state courts and is procedurally defaulted. Even if it were not defaulted, it would not entitle Morris to relief. Morris was sentenced on December 18, 2008 (Doc. 5-1 at 5-7), and his appointed trial counsel filed a notice of appeal on December 22, 2008. (*Id.* at 52-53). Morris was not appointed an appellate attorney until January 15, 2009, at which time a transcript was also ordered by the court. (*Id.* at 52, 54). As a result, Morris's

appellate counsel was not in a position to raise ineffective-assistance-of-trial-counsel claims in the trial court in the first instance, as required to perfect such claims for appeal, *see Ex parte Ingram*, 675 So. 2d 863, 864-65 (Ala. 1996), so appellate counsel's performance was not deficient.  *Cf. Trevino v. Thaler*, ___ U.S. ___, ___, 133 S. Ct. 1911, 1918 (2013) (recognizing that Texas criminal procedure "makes it virtually impossible for appellate counsel to adequately present an ineffective assistance of trial counsel claim on direct review" (internal quotation marks, citation, and brackets omitted)); *Massaro v. United States*, 538 U.S. 500, 504-05 (2003) ("When an ineffective- assistance claim is brought on direct appeal, appellate counsel and the court must proceed on a trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose.").  Further, for reasons already stated, Morris has failed to show that any of his underlying claims alleging that his trial counsel was ineffective have merit.  Therefore, the failure to raise such claims on appeal was not ineffective assistance of counsel.  *See Diaz v. Secretary for the Dep't of Corr.*, 402 F.3d 1136, 1144-45 (11th Cir. 2005); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

### B.      Claim 3 - Substantive Challenge to Admission of the Videotape

In Claim 3, Morris appears to raise a substantive claim contesting the admission of the videotape.  (Pet. at 15 ("Petitioner moves the court for an order suppressing [the] puttogether (sic) tape that was played at different speeds to mislead the jury" (citation omitted)).  However, Morris has not alleged that the admission of the videotape violated any federal constitutional right, and this court cannot grant habeas relief based on errors of state law.  In addition, no such claim was presented to the Alabama Supreme Court, so it is unexhausted and procedurally defaulted in light of this court's

44

prior conclusions that Morris's counsel was not ineffective for failing to raise further objections to the videotape and that Morris has not shown that he is actually innocent.  This claim is due to be denied.

C.      **Claims 4 and 5 - Alleged Violations in the Rule 32 Proceedings**

In his final two grounds for relief, which the court has enumerated as Claims 4 and 5, Morris argues that the Alabama courts improperly denied him an evidentiary hearing on his ineffective-assistance claims in the Rule 32 proceedings (Pet. at 5, ¶ 12A) and were "manifestly unfair" in holding that he had failed to sufficiently plead his ineffective-assistance claims for purposes of ALA. R. CRIM. P. 32.6(b).  (*Id.* at 5, ¶ 12C; *see also id.* at 20-22).  Morris argued to the Alabama Supreme Court that the such actions by the lower Alabama courts addressing his Rule 32 claims had denied him "procedural and substantive due process."  (Doc. 5-12 at 5).  Even assuming that were true, however, this court cannot grant habeas relief based on constitutional violations that might have occurred in state post-conviction proceedings because such errors do not impugn the validity of an underlying conviction or sentence.  *See Carroll v. Secretary, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).

IV.     **CONCLUSION**

Based on the foregoing, Morris's § 2254 habeas petition is due to be **DENIED**.  A separate final order will be entered.

**DONE**, this the 28th day of March, 2014.

Sharon Lovelace Blackburn

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE